INTENDANT AND WARDENS OF TOWN OF·PORT ROYAL

v. CHARLESTON & W. C. RY. CO.

(134 S. E., 497)

1. Injunction—Action to Enjoin Entry on Lands and Removal of Oyster Shell Deposit Held in Effect One to try Title.—Where plaintiff, in action to enjoin railroad from entering certain lands and removing oyster shell deposit thereon, alleged ownership of land and shells, action was in effect one to try title, requiring proof of title by plaintiff, rather than one to prevent trespass on shell pile.

2. Injunction—Action to Enjoin Railroad's Entry on Land and Removal of Oyster Shell Deposits Therefrom Held to Involve Railroad's Right to Continue Operating Cars Over Premises.—Action to enjoin railroad from entering land over which it had been maintaining track and to prevent it from removing oyster shell deposits thereon *held* one involving issue of railroad's right to continue operation of its cars over premises involved.

3. Evidence.—In Action Involving Town's Title to Land, Town's Tax Books Were Not Admissible to Show Sale of Land for Taxes and Purchase by Town.—In town's action to enjoin railroad's entering on land and removal of oyster shell deposits therefrom, wherein title of plaintiff to own land was in issue, *held* tax books of town were not admissible to prove that premises had been assessed as property of particular company, sold for taxes, and purchased by town.

4. Evidence—In Action Involving Town's Title to Land, Exclusion of Self-serving Minutes of Town Council Relative to Lease of Such Premises by Town Held Not Error.—In town's action to enjoin railroad's entry on land and removal of oyster shell deposits therefrom, where town's title to land was in issue, exclusion of self-serving minutes of town council relative to lease made by town of such premises *held* not error.

5. Adverse Possession.—In town's action to enjoin railroad's entry on land and removal of oyster shell deposits therefrom, Court properly ruled that railroad's occupancy of land for many years tended to prove that exclusive possession was not in plaintiff town.

6. Navigable Waters—Oyster Shell Deposits Above High Water Mark Held to be Land, in View of Intent in Making Deposit.— In town's action to enjoin railroad's entry on land and removal of oyster shell deposit, Court properly ruled that shells above high-water mark were land if shells below high-water mark made land, in view of agreed intent to create real estate when deposit was made.

7. NAVIGABLE WATERS—TOWN SUING TO ENJOIN REMOVAL OF OYSTER SHELL DEPOSIT, FAILING TO SHOW TITLE BY ACCRETION TO DEPOSIT, HELD REQUIRED TO SHOW OTHER TITLE.—Where town, suing to enjoin railroad's entry on land and removal of oyster shell deposits therefrom, failed to establish ownership of adjoining highlands entitling it to claim ownership of deposit by accretion, Court properly held that it must prove title and possession for 10 years, or 20 years' statutory possession.

8. APPEAL AND ERROR.—In action involving town's title to land and oyster shell deposit, error, if any, in requiring proof of town's prior possession before proof that it provided site for canning factory *held* not prejudicial, where town's lease to company was admitted in evidence.

9. ADVERSE POSSESSION.—Town suing to enjoin railroad's entry on land and removal of oyster shell deposit therefrom *held* not to have established exclusive possession, in view of railroad's admitted possession, of part of premises.

10. INJUNCTION—IN TOWN'S ACTION TO ENJOIN RAILROAD'S ENTRY ON LAND, IN EFFECT ACTION TO TRY TITLE, WHERE TOWN DID NOT ESTABLISH PAPER TITLE OR EXCLUSIVE POSSESSION OF WHOLE TRACT, NONSUIT WAS PROPERLY GRANTED.—In town's action to enjoin railroad's entry on land and removal of oyster shell deposit therefrom, in effect an action to try title, where town did not show paper title or exclusive possession of entire tract, where testimony was not such as to enable Court and jury to determine what part of premises, if any, plaintiff was entitled to, *held* nonsuit was properly ordered.

Before DENNIS, J., Beaufort, December, 1924.   Affirmed.

Action by the Intendant and Wardens of the Town of Port Royal against the Charleston & Western Carolina Railway Company.   From an order granting a motion for nonsuit, plaintiff appeals.

The following are plaintiff's exceptions:

"First Exception.   The Court erred in holding that this was an action to recover land; the error being that the entire record, as well as the complaint, shows it to be an action to prevent a threatened trespass upon and destruction of a shell pile on lands of plaintiff and in its possession.

"Second Exception.   The Court erred in holding and deciding that this action was intended to or could operate to

prevent the use by the defendant railroad company of the track across it to the Government coal chute heretofore used by it and still being used by it; the error being that in so holding and deciding the Court injected a new issue into the case not made by the pleadings.

"Third Exception.   The Court erred in holding and deciding that there was an issue raised as to the right of the defendant railroad company to continue to operate its cars across the premises prescribed in the complaint, to the Government coal chute beyond it; the error being that this was not such an action, but was an action brought to restrain the defendant from entering upon and taking away from said lands the oyster shells deposited thereon and belonging to the town of Port Royal and the Court should have so held.

"Fourth Exception.   The Court erred in excluding from the consideration of the jury the tax books of the clerk and treasurer of the town of Port Royal, offered for the purpose of showing that the premises in question from 1882 to 1897 were assessed against as the property of the Port Royal & Augusta Compress Company; the error being that these books are public official records, kept in the regular course of duty for public purposes, besides being ancient documents, and admissible as such; and the Court should have so held and erred in excluding the same.

"Fifth Exception.   The Court erred in excluding from the consideration of the jury the tax books of the clerk and treasurer of the town of Port Royal for the year 1897 offered for the purpose of showing the following entry by the clerk and treasurer, against the assessment of Port Royal & Augusta Compress Company: 'Port Royal & Augusta Compress Company. (Lot) 5.65 acres land; $5,000.00. Sold and bought in by town of Port Royal in 1897. Tax on real estate $37.50 (for 1897).   Total tax $37.50.   (In pencil sold to town Jan. 10/98.)   Ex. taxes due since 1888. Total with penalty and ex. $423.87. Given to Marshal Nov. 22/97.   Sold to town of Port Royal for

taxes, penalty and cost of sale Jan. 10/98. Amt. $424.37. Execution filed with town papers'—the error being that this was a public record kept by a regular public official in the course of his duties and is admissible to show whatever entries are officially made therein and the weight to be given it is the proper province of the jury.

"Sixth Exception. The Court erred in excluding from the consideration of the jury the minutes of council of the town of Port Royal for the meeting of December 21, 1909, offered to prove the following entry as being corroborative evidence of ownership by the Town of Port Royal of the oyster shell deposit: 'Ordered that the town dispose of oyster shells to the county at one-half (½) cent per bushel' —the error being that these being the minutes of a municipal corporation are admissible in evidence either for or against them; the weight to be given thereto being for the jury to decide, and the Court should have admitted them and erred in not so doing.

"Seventh Exception. The Court erred in excluding from the consideration of the jury the minutes of council of the town of Port Royal for the meeting of January 26, 1910, offered for the purpose of proving the following entry, to wit: 'Communication of Maggioni & Co. read, and ordered that receipt or acknowledgment be given for all shell northwest of "shack" on shell pile; shell to be removed at convenience of town'—the error being that the minutes of a municipal corporation are admissible as a public record, either for or against the corporation, and this was also introduced to show that the shells were acquired from Maggioni & Co., their lessee.

"Eighth Exception. The Court erred in excluding from the consideration of the jury the minutes of council of the town of Port Royal for the meeting of August 3, 1910, offered for the purpose of proving the following entry: 'Communication of L. P. Maggioni & Co. read, and ordered that L. P. Maggioni & Co. be granted an extension of lease

for five years, provided they run the oyster factory each
season and that their checks and drafts are made negotiable
at all stores in the town of Port Royal.  A failure to com-
ply with the above terms will be a forfeiture of the right
they now enjoy'—the error being that the minutes of a
municipal corporation are public records and as such admis-
sible in evidence for whatever they may prove or tend to
prove, and for the further reason that this was competent
evidence to show the possession by plaintiff of the lands in-
volved through their tenant, Maggioni & Co.

"Ninth Exception.  The Court erred in excluding from
the consideration of the jury the minutes of council of the
town of Port Royal for the meeting of May 24, 1916, of-
fered for the purpose of proving the following entry: 'Re-
newal of lease of Maggioni & Co. taken up, and it was
ordered that lease be renewed for period of five years, with
clause added allowing the property to be transferred to
another in case lessee desires to dispose of same, this lease
binding the party to whom transferred.  It was also ordered
that J. L. Wall, intendant, be and is empowered to sign said
lease in behalf of the town'—the error being that the
minutes of a municipal corporation are public records and
admissible as such for whatever they may prove or tend to
prove, and for the further reason that this was evidence to
prove the existence of a prior lease to the same lessee.

"Tenth Exception.  The Court erred in excluding from
the consideration of the jury the minutes of council of the
town of Port Royal for the meeting of July 15th, 1919,
offered for the purpose of proving the following entry:
'Ordered that Warden Gilbert be appointed a committee of
one to confer with the Beaufort & Savannah line and offer
them a landing at oyster factory site if satisfactory arrange-
ments can be made'—the error being that the minutes of a
municipal corporation are admissible for whatever they may
prove or tend to prove, and this tended to prove possession
by plaintiff of the oyster factory site.

"Eleventh Exception. The Court erred in assuming that the use by the defendant of a spur track across the lands in question raised a presumption of ownership by it of the right of way or lands; the error being that the evidence showed that the spur was built during the World War and for governmental purposes, and furthermore, that the use by a railroad of a spur track for a private or special service to an individual or governmental agency raises only a presumption of a permission given or commanded for war purposes, and the Court should have held that the presence and use by defendant railroad company of this spur track across the premises involved for handling coal to the Government coal chute built by the Government during the World War and governmental control of railroads did not raise any presumption of railroad ownership of any lands crossed by it, and at most could only raise a presumption of permissive use and occupancy of the portion covered by its tracks.

"Twelfth Exception. The Court erred in holding and deciding that the tax books of the town of Port Royal were not admissible for the purpose of proving that tax executions had been issued and the premises involved in this cause sold thereunder and purchased by the town of Port Royal, but that the town marshal had failed to execute and deliver any deed for the same; the error being that it affirmatively appeared that no deed had been executed and therefore the records were admissible to prove that a deed should have been executed and that the town of Port Royal was legally entitled to a deed covering the premises involved, and, further, that the town tax books, being public records, are admissible to prove any fact appearing officially on them.

"Thirteenth Exception. The Court erred in holding and ruling that the oyster shells above high-water mark were land if the oyster shells below high-water mark made land; the error being that, since title to lands on tide water does not extend below high-water mark, the shells deposited on lands below high-water mark can be either lands or chattels,

according to the intent of the owner of the shells, and if the shells deposited extend above high-water mark, the owner thereof becomes, as against all persons except the State itself, the owner of the land thus reclaimed, and can treat the whole or any portion of the shells above high-water mark as chattels and still hold possession of the balance as reclaimed lands, and the Court should have so held and ruled, and erred in not so doing.

"Fourteenth Exception. The Court erred in ruling and holding that it was necessary for plaintiff to prove a written title and possession for 10 years, or 20 years' statutory possession, of the premises involved, before it could prevail; the error being that it was proven that the premises involved were tidal lands below high-water mark and adjacent to the public streets of the town of Port Royal, and that the shells were placed thereon by plaintiff's lessee under a contract which prohibited their removal below high-water mark, and since the shells which created the highlands were the property of the town of Port Royal and extended on every side from public streets of the said town extending through and alongside said premises, which streets were in the same way built up above high-water mark, then the adjacent reclaimed lands, irrespective of any other source of title, became by accretion the property of the owner of the street, to wit, the town of Port Royal, and the Court should have so held.

"Fifteenth Exception. The Court erred in holding and deciding that it was necessary for plaintiff to show title in itself to the land; the error being that plaintiff was entitled *prima facie* to an injunction against the threatened trespasses upon the showing of prior peaceable possession with ownership and occupation of the shell deposits alone, and the burden of showing a better right was thereby cast upon the defendant, and the Court should have so held and decided.

"Sixteenth Exception. The Court erred in holding and deciding that it was necessary for plaintiff to show a title

in itself to the lands involved; the error being that it had been shown that the lands were originally below high-water mark and therefore presumed, in the absence of a special grant from the Legislature, to be public lands, and the ownership by the town of Port Royal of the oyster shell deposits thereon was sufficient occupancy and possession of the land, which, by reason of said deposits, extended above high-water mark, to prevent a trespass by any other person not showing a better right, and also was a sufficient occupancy and possession of the shells to entitle it to an injunction to prevent them from being taken and carried away by any other person, and the Court should have held that the fact that the shells were deposited upon public marshes did not deprive the plaintiff of its ownership or possession thereof, and erred in not so holding and deciding.

"Seventeenth Exception. The Court erred in sustaining the first ground of defendant's motion for a nonsuit, and thereby in effect holding and deciding that plaintiff was relying on adverse possession or possession under the 20 years' statute right of prescription. The error being that this was a misconception of plaintiff's case, since plaintiff was relying on: First, ownership of the land by purchase at its own tax sale in 1897 and possession ever since, either by itself or its lessees; second, ownership by right of reclaiming public marshes; third, ownership by right of accretion to a riparian proprietor, the town being the owner of the adjacent and included streets; and, fourth, ownership of the shell deposits, whether the same be upon public lands or upon its own lands—and the Court should have so held and should have overruled this ground of motion for nonsuit, and erred in not so doing.

"Eighteenth Exception. The Court erred in holding and deciding that plaintiff had shown no exclusive possession; the error being that since in the nature of tides there can be no exclusive possession, or *possessio pedis,* of lands below high-water mark, and since the town of Port Royal was the

owner of the shell deposits which converted this from submerged public lands to highlands capable of private ownership, then, as owner of the shell deposit, and as creator of the highland, and as possessor of the overlying stratum of shells which changed its nature from tide flats to highlands, the town of Port Royal was in the exclusive possession of the shell deposits, and therefore of the lands underneath them, from the time of their creation, and the Court should have so held; and so holding, should have further held that in the absence of a superior title the plaintiff was entitled to the injunction sought against interference with the said shell deposits or the land under them.

"Nineteenth Exception.  The Court erred in excluding from the consideration of the jury the minutes of council of the town of Port Royal for the meeting of November 16, 1920, offered for the purpose of showing the possession and control by the town of Port Royal of the oyster factory site in connection with the testimony of H. W. Kirkland as to leasing it to John C. Calhoun; the error being that the said minutes are admissible as corroborating evidence to sustain his testimony, and also because the said minutes are a public record kept by a municipal corporation and therefore admissible as evidence for whatever they prove or tend to prove in connection with the issues involved.

"Twentieth Exception.  The Court erred in excluding from the consideration of the jury and ruling out the testimony of Dr. M. B. Cope to the effect that the town of Port Royal provided the premises involved in this cause as a site for the canning factory of Maggioni & Co., and that said Maggioni & Co. went into the occupancy thereof; the error being that such possession by a tenant is the possession of the landlord, and that it is permissible to prove occupancy by a tenant to prove occupancy of the landlord.

"Twenty-first Exception.  The Court erred in ruling and holding that before it would be permissible for plaintiff to prove that it provided the site for the canning factory, and

that the canning factory occupied the premises under such provision, it would be necessary for plaintiff to prove prior possession; the error being that such proof of occupancy under the plaintiff, as landlord, is itself proof of possession by plaintiff, and the Court should have so held.

"Twenty-Second Exception. The Court erred in granting a nonsuit on the whole case as presented; there being sufficient evidence of possession by the town of Port Royal and ownership of the shell deposits to sustain an action for trespass on the land as well as injunction to prevent the trespass upon and taking away of the shells themselves."

*Mr. George W. Beckett,* for appellant, cite: *Soil below high-water mark of navigable river not subject to grant:* 22 S. C., 84; 94 U. S., 324; 3 How., 471; 16 Peters, 367; Gould on Waters, Secs. 18, 20 and 24. *Same; not to be acquired by adverse possession:* Gould on Water, Sec. 27. *City owing bank of navigable river entitled to accretions:* Gould on Waters, Sec. 157. *State owns soil below high-water mark of navigable river:* 22 S. C., 484; 22 S. C., 50; Const. of 1895, Art. 1, Sec. 28. *Admissibility of records of city council in behalf of city:* Jones on Evidence, Sec. 514, Dillon on Munic. Corp., Sec. 293. *Oyster shells attached to land are fixtures:* 20 Ann. Cas., 1337; 1 R. C. L., 1058; 11 R. C. L., 1062. *Oyster shells not attached to land are chattels:* 11 R. C. L., 1062. *Deposits on public marshes making highland may be fixtures or chattels:* 11 R. C. L., 1062; Gould on Waters, Secs. 175-178.

*Messrs. F. B. Grier, W. J. Thomas, and M. G. McDonald,* for respondent, cite: *Action is trepass to try title:* 114 S. C., 375; 104 S. C., 381; 89 S. C., 420; 59 S. C., 115. *No title acquired by tax sale not in conformity to law:* 110 S. C., 448; 67 S. C., 526; 32 S. C., 58. *Title by accretion depends on riparian nature of claimant's land.* 1 R. C. L., 232. *Title to land covered by navigable water not acquired by filling in by owner of adjacent lands:* 22 R. C. L., 287.

September 24, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an appeal from an order of his Honor, Judge Dennis, granting a motion for a nonsuit. The plaintiff alleges that it is the owner of a tract of 6 7/10 or more acres of land near the terminus of the defendant's railroad tracks, on which tract of land there is a deposit of oyster shells, the accumulation of a number of year, about 1,000,000 bushels or more of which are above high-water mark on the property of the plaintiff; that the defendant railway company, without authority of any kind, is about to take and carry away the shells in question against the objection of the plaintiff and without paying the plaintiff therefor, and for that purpose is about to construct a spur track on and over the lands of the plaintiff, in order to dig and carry away the said shells, the property of the plaintiff; and that said acts, if done, would constitute a high-handed trespass, for which the plaintiff would have no adequate remedy at law.

The defendant, answering, denies the alllegations of the complaint and alleges adverse possession in itself to the property in question, and alleges that neither the plaintiff nor its predecessors nor grantors had been seized or possessed of the said premises within 10 years before the commencement of this action, and that the defendant has held and possessed the premises for more than 10 years and for more than 20 years and for more than 30 years before the commencement of this action, holding same openly, adversely, and notoriously against plaintiff and all other persons. It also claims title to the said premises founded upon a written instrument as being a conveyance of the premises in question, and that it has been in possession of the said premises under such instrument for more than 10 years and more than 20 years before the commencement of this action, and that it had paid to the plaintiff

taxes on the said land for more than 10 years and for more than 20 years and for more than 30 years before this action was begun.

The case came on for trial in the Court of Common Pleas for Beaufort County on December 12, 1924, and at the conclusion of the plaintiff's testimony the defendant moved for a nonsuit upon the following ground:

"(1) On the ground the plaintiff necessarily is relying either on adverse possession, or under the 20 years' statute right by prescription. I assume that he is relying only on adverse possession, because his acts of ownership do not run back 20 years, and the undisputed evidence in the case is all to the effect that the possession of the town has not beeen exclusive, but, from time immemorial the railroad has had a track completely across the entire property, and the possession of the town has not been exclusive to the possession of the railroad.

"(2) And on the further ground, that under the plaintiff's theory of the case, the town could not exercise any acts of ownership. As I understand Mr. Beckett's position, it is that this land, or a portion of it, at least, orginally belonged to the State, because it was below tidewater and no title could be acquired to it—

"The Court: Until it got above tidewater?

"Mr. McDonald: Yes, sir; or under the acts of the Legislature.

"(3) The plaintiff himself has shown, from his own testimony, that the State has not even been vested with title. For instance, they have not been in possession of it from the time they took possession, and have not paid taxes on it for 20 years, and therefore they could not get possession of it."

The Court, by the following ruling, ordered a nonsuit:

"Now, Mr. Beckett, I am going to make a ruling that gives you the opportunity to do one or two things, just as you deem best will give you relief. It seems to me that

this being an action to pass on title to a given tract of land, and it being true that at the most that you are entitled to a part of it only, if entitued to that, and that as to a part of it you have shown no exclusive possession, it being admitted that the railroad owns or occupied it and has occupied it for a number of years, this part of the land, and being no proof that it has occupied it by permission, and it seems to me that you have not proven the possession to the whole tract of land, I cannot see how, under your complaint, you would be entitled to recover all of the land any more than if the railroad should come in and show that it had occupied a part of this land for 40 years and try to claim it all.  If you held this title by adverse possession you can recover only so much of it as you held adversely.  There is no proof that you have held adversely the part of this land that is occupied by the railroad.  In other words, if you were to win this suit, and it being decided that this entire tract of land belonged to the town of Port Royal and then it being a question whether the town of Port Royal would continue to operate its road across there, that would be a matter that the railroad could not claim they owned this land, and it being determined in this case that your client owned the land that the railroad was on.  So, as I say, you can do one or two things, bring a new action and leaving out that part of it that has been occupied by the railroad as a right of way for its trains to operate across.  Of course, in the event you would, the injunction would remain, could not resolve it out until that was done.  It seems to me that the difficulty in the case is that you are undertaking to prevent a trespass on a tract, and therefore you have not shown your right to the entire tract of land, and, under the pleadings, the Court and the jury cannot divide it and say what you are entitled to and what part the railroad is entitled to, and for that reason I grant the nonsuit."

The plaintiff now comes to this Court on appeal by 22 exceptions, which will be reported.

By exceptions 1, 15, and 16 the appellant raises in varying form the question as to the nature of this action, contending, in effect, that it is an action to prevent trespass upon a shell pile on lands of the plaintiff and in its possession and does not involve title to land.

An examination of the pleadings reveals at once that this position is untenable. The appellant in its complaint does not base its action upon possession, but alleges that it is the owner of the land in question and also of the oyster shells on same, and prays judgment that the defendant "be permanently enjoined from entering upon or disturbing said land or the oyster shell deposit thereon," etc. Not only does the plaintiff by its complaint base its action upon ownership of the property in question, but the record shows that it endeavored by its testimony to establish in itself title to the property. If even attempted, though unsuccessfully, to prove that it held a tax title to the land in dispute. And even if the complaint and testimony of the plaintiff had left any doubt as to the nature of the action, the defendant's answer, denying, as it does, the title of the plaintiff to the property and claiming title and possession in itself, clearly put the title to the land in issue, and this would be sufficient, under the law of this State, to put the title in issue as to both parties. See *Lucius v. Du Bose,* 114 S. C., 375; 103 S. E., 759.

To show that the second and third exceptions are without merit, it is necessary only to refer to the complaint itself. The relief demanded by the complaint, if granted, would certainly prevent the defendant from operating its cars across the premises in question.

The appellant complains by its exceptions 4, 5, and 12 that the Court erred in holding that the tax books of the Town of Port Royal were inadmissible for the purpose of proving that the premises in question were assessed against as property of the Port Royal & Augusta Compress Company for some years, that tax execution was

issued, and that the premises were sold for taxes and purchased by the Town of Port Royal in .1897, and that the town marshal failed to deliver any deed for same. An examination of the record discloses that the Court ruled that he would admit the tax books of the town for the purpose of showing that nobody, including the defendant, paid taxes on the property. It does not appear, however, that the plaintiff took advantage of the ruling to introduce the books for that purpose, which clearly would be to show a circumstance tending to negative the claim of ownership. The Court was clearly right in refusing to admit the town's tax books for the purposes contended for in these exceptions. The appellant insists that, as these books were public official records kept in the regular course of duty for public purposes, they were admissible to show whatever entries had been officially made therein. The same questions arose in the case of *Fraser & Dill v. Charleston*, 8 S. C., 318. In that case it was held that such books were admissible in evidence as to entries of certain public nature. The Court said:

"It is claimed that the book is evidence to prove all that it purports to contain, because it is a book of a public corporation, and as such is competent in favor of the city to show the disposition of stock against one in whom the title is admitted to have once stood. The proposition contended for, to the extent now proposed, cannot be admitted. It is true the books of such a corporation, so far as they relate to its public and general laws—laws which it is authorized to enact for the purpose of the due execution of the duties and obligations imposed by its charter; laws in furtherance of the design the Legislature had in view when it gave it corporate existence; laws which are necessary to enforce the powers delegated by the act of its incorporation —may be proved by their books in due form kept and produced from their proper custody. They may be received in evidence as the record of the exercise of the power, of

legislation granted to the corporation by its charter. Not so, however, with a book of the nature of the one in question, which in no way partakes of the character of those to which we have just referred.

"Even as regards 'an entry in a public book of a corporation,' Mr. Grant, in his work on Corporations, p. 318, says: 'In order to be evidence for the corporation, or for a defendant justifying in right of the corporation, it must be of a public nature; and therefore the corporation will not be allowed to make evidence for itself by entries in the public books of facts going to support its title in any case to any claim or demand, even though the entry be made in a formal style and be signed by the corporate officers whose duty it was to make such entries."

This reasoning applies in the present case. The entries here are not of that public nature, pointed out and defined in the *Fraser case,* which would make them, when taken alone, admissible, but, on the contrary, are clearly entries of fact going to support the corporation's title to a claim or demand and so in that class of entries expressly declared in the *Fraser case* to be inadmissible. However, if the plaintiff had introduced in evidence a tax deed to the premises, then the tax books would have been admissible for the purpose of showing the prior necessary steps taken in procuring such deed.

4      Exceptions 6, 7, 8, 9, 10, 19, and 20 impute error to the Circuit Judge in refusing to admit in evidence the minutes of council of the Town of Port Royal for the purpose of showing certain entries tending to prove possession or control by the Town of Port Royal of the premises involved in this action. Some of these entries have to do specifically with a lease of the premises or a part thereof from the Town of Port Royal to Maggioni & Co. If there had been error in refusing to admit the minutes containing the Maggioni entries it would have been cured by the admission of the lease. But there was no error.

What we have said in discussing exceptions 4, 5, and 12 applies with equal force to all the exceptions considered in this paragraph. The entries sought to be introduced were clearly self-serving, and the minutes were inadmissible under the *Frazer case.*

By its eleventh exception the appellant complains that the Court erred in assuming that the use by the defendant of a spur track across the land in question raised a presumption of ownership by it of the right of way or land. Examination of the record does not disclose that the Court made any such assumption or ruling, but, on the other hand, the Court ruled, and correctly, that the occupancy of this land by the railroad for many years, as shown by the testimony, tended to prove that exclusive possession of the property was not in the plaintiff.

By its thirteenth exception the appellant imputes error to the Circuit Court in holding that the oyster shells above high-water mark were land if the oyster shells below high-water mark made land. It is agreed that at the outset the purpose and intent of depositing the oyster shells was to create real estate. The testimony does not show any change of such intent or purpose as the deposit grew beyond high-water mark, and therefore we conclude that the original intent and purpose persisted, and that the intent and purpose of the deposit of shells above high-water mark was likewise to build up and create real estate. It follows that, even if the Circuit Judge was in error in his reasoning, such error was without prejudice, as his conclusion was correct.

By its fourteenth exception the appellant complains of error on the part of the Circuit Judge in holding "that it was necessary for plaintiff to prove a written title and possession for 10 years, or 20 years' statutory possession, of the premises involved, before it could prevail," the error being that the town became the owner of the premises by accretion. Strictly speaking, the building up

of the marsh lands in question was not an accretion but was rather in the nature of a reclamation. 29 Cyc., 351 (b). But, whether the process of building up be considered as accretion or as reclamation, the plaintiff failed to show that it was the owner of the adjoining highlands, so as to vest in itself the title to the alluvial soil.

Exception 21 cannot be sustained. As has been pointed out, the Court allowed the introduction of the lease from the town to Maggioni & Co. This lease tended to prove all that the plaintiff sought to show, which was to prove possession by the plaintiff through proof of occupancy under the plaintiff as landlord. Consequently, if the Court committed any error, as complained of, in holding that the plaintiff must prove prior possession before it would be allowed to prove that it provided the site for the canning factory, such error was cured by the introduction of the lease and was without prejudice.

The eighteenth exception shows no error in the trial Court. The holding of the trial Judge that the plaintiff had shown no exclusive possession was sustained by the testimony and was based, not upon the nature of the property, but upon the fact that the testimony showed that the railroad had held possession of a part of the premises.

It will be unnecessary to discusss the seventeenth and twenty-second exceptions, since all the questions raised in these exceptions have been considered in our dicussion of other exceptions, and a repetition of such discussion would be of no benefit.

It seems proper to add, without regard to the numerous questions raised by the appellant's exceptions, that the Circuit Judge correctly conceived the nature of this action and consistently conformed the hearing of the cause thereto. The proceeding resolved itself into an action to try title, and, the appellant having failed to show that it held the land under paper title and having

failed to show exclusive possession to the entire tract, and the testimony not being such as to enable the Court and the jury to say what part of the premises, if any, the plaintiff was entitled to, the trial Judge very properly, upon a view of the case as a whole, ordered a nonsuit, so that the parties are left as they were before the commencement of the suit, except that the hearing developed information which should be of considerable value in enabling the parties to establish their respective rights in a subsequent suit if they shall be so minded.

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

Messrs. Justices Watts, Cothran, Blease and Acting Associate Justice R. O. Purdy concur.

Mr. Chief Justice Gary did not participate.